## R. WASHINGTON *v.* THE STATE.

1. SPECIAL VENIRE — SERVICE OF COPY. — In a trial for murder, the defendant moved to quash the special *venire* and the copy thereof, because the clerk and sheriff had not complied with art. 616 of the Revised Code of Criminal Procedure, which prescribes their duties in regard to the service on a defendant of a copy of a special *venire*. The court below sustained the motion in so far as it involved the sufficiency of the clerk's certificate and the sheriff's return, but allowed them to amend those official acts, — the actual service on the defendant of a true copy not being controverted. *Held*, that the certificate and return were amendable, and, as no possible prejudice to the defendant is shown, there was no error in the ruling of the court below.

2. CIRCUMSTANTIAL EVIDENCE. — When the inculpatory evidence is circumstantial in its nature, the mind seeks to explore all sources from which light, however feeble, may be derived. In the investigation of such cases, therefore, greater scope is allowable than when the evidence is direct and positive.

3. SAME — CASE STATED. — The deceased was shot dead by an unseen assassin. In a trial for the murder, the State was allowed, in connection with other circumstances, to prove that the deceased had been shot and wounded a short time previous to the murder, and that the defendant had admitted that he was the person who committed that assault. *Held*, that this evidence was competent both as tending to identify the defendant as the perpetrator of the homicide and as showing his *animus* towards the deceased.

4. MURDER — FACT CASE. — See evidence recapitulated in the opinion, and held amply sufficient to support a conviction for murder in the first degree.

APPEAL from the District Court of Harrison. Tried below before the Hon. A. J. BOOTY.

The opinion in this case gives a full and clear statement of the material facts.

No brief for the appellant has reached the reporters.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, P. J. It is charged in the indictment in this case that on the sixteenth day of August, 1879, the appellant, Ruffin Washington, murdered one Jap Taylor, in the county of Harrison. The trial below resulted in his conviction of murder of the first degree, with an assessment of punishment at imprisonment for life in the State penitentiary.

Preliminary to the trial, defendant filed a motion to quash the special *venire* summoned in the case, and the copy of the same as served upon him, because the clerk in certifying, and the sheriff in serving and returning the certified copy of the list of names of persons summoned, did not comply with or conform to the requirements of the statute. The statute prescribes that " the clerk, immediately upon receiving the list of names of persons summoned under a special *venire*, shall make a certified copy thereof, and issue a writ commanding the sheriff to deliver such certified copy to the defendant ; and such sheriff shall immediately deliver such copy to the defendant and return the writ, indorsing

thereon the manner and time of its execution.'' Code Cr. Proc., art. 616. This statute changes somewhat the practice as it existed before the revision of our laws, and the action of the clerk and sheriff in the premises was as it obtained under the old law. Pasc. Dig., art. 3021. The court sustained defendant's motion in so far as it related to the sufficiency of the clerk's certificate and the sheriff's return upon the writ, but allowed those officers each to amend so as to make their respective acts correspond with the present statutory requirements. The motion to quash the special *venire* was overruled.

Defendant's first bill of exceptions was saved to the action of the court in these matters, and is here assigned for error.

We are unable to see that defendant's rights were in any wise prejudiced, or how he could have been injured in the premises. As served upon him, it is not contended that the list was not an exact copy of the original, drawn, issued for, and summoned as the law required. Nor was it claimed that it was not certified as a correct copy by the clerk, and actually served and returned by the sheriff. The sufficiency of the certificate and return were alone called in question. These, we think, were amendable, and the action of the court in permitting the amendments will be sustained, because no possible injury could have accrued to defendant. As has been said by this court time and again, such grounds of complaint should not occur in cases where the duties of officers are so clearly and plainly defined by the law. *Richardson* v. *The State,* 7 Texas Ct. App. 486. Errors in mere matters of form can only arise from carelessness of the officials, where a simple reference to the statute would avoid them.

The case was one entirely of circumstantial evidence. The homicide occurred on Saturday night, as deceased was returning from church; and though several parties were near by, none of them saw the assassin, who, lying in wait and under cover of the darkness of night, fired the fatal shot.

Some two or three weeks prior to the killing, the deceased had been waylaid and shot through the wrist or hand by some unknown person. On the trial, several exceptions were reserved to the rulings of the court in permitting the prosecution to inquire into this previous shooting. Floyd Williams, one of the witnesses whose testimony was objected to, said, amongst other things, detailing a conversation he had with defendant about this shooting: " I asked defendant if he shot Jap. At first defendant said nothing; but after I asked him again, and I asked him to tell me and that I would not tell it, then defendant, laughing, said, ' The man who shot Jap would do it again.' Defendant then said, after I asked him to tell me who shot Jap, that he shot Jap." And the witness Joe Temple gave an account of this previous shooting of Jap through the wrist, and stated that he saw the defendant shortly afterwards, some half a mile from the place of shooting, and that defendant asked witness for a cartridge. All the testimony with regard to the first shooting was admissible, both as strongly tending to identify the perpetrator of the homicide, and as showing the *animus* of the prisoner towards deceased. In cases of circumstantial evidence, the mind seeks to explore every possible source from which any light, however feeble, may be derived. *Noftsinger* v. *The State*, 7 Texas Ct. App. 301, and authorities cited.

It only remains to determine the sufficiency of the evidence; and without attempting to reproduce, or even repeat in full the substance of, the testimony of the witnesses, we make the following brief summary of the prominent features as derived from the statement of facts. Defendant was unfriendly towards deceased on account of Clarissa Reagan, a woman who it seems had separated from her husband, and whom defendant said he had " had the swing of for seven or eight years." Whether correct or not in such conjectures, it seems that he had become convinced that deceased was about to, if he had not already, sup-

planted him in the affections of the woman, and a week before the killing defendant told the witness Arch Spencer, speaking of this matter, " that before he would suffer such a man as Jap (the deceased) to get ahead of him, he would lose his neck." On the Saturday evening before the killing, defendant borrowed Grant George's shot-gun, and that same night told Lizzie Caviness that " Jap Taylor was bound to go out, and that Jap could not stay." He had previously told Peggy Swan that he had tried to get Woodson Reagan to kill Jap, and that when Woodson said he would not, that then he (defendant) told Woodson that he (defendant) intended to kill Jap anyhow. That same evening he was very apprehensive that Jap was going to get into trouble, because, he said, that on the previous Tuesday night, when he was returning from church, he met six men hunting for Jap, who told him they would give $10 to know where Jap was, and that they would give $10 for a spoonful of Jap's brains.

Late in the night after the homicide, defendant returned the gun which he had borrowed of Grant George; it might have been as late as one o'clock, according to his own witness, Adam Faggott. Woodson Reagan, who staid at defendant's house that night, said he went to bed between nine and ten, and that defendant was not at home at that time. Next morning he found defendant sitting in a chair before the fire, like a man studying; he appeared downhearted, and witness did not know whether defendant went to bed that night or not. That same morning, defendant told Lizzie Caviness " that that man went out last night, just as I told you he would." Afterwards, when he saw the coroner's jury going to hold an inquest upon the dead body, and was told who they were and their purpose, he asked the witness Spencer " if he (witness) thought they could find out who killed Jap. He said they would have to prove who killed Jap. Defendant looked scared when I told him that the magistrate, constable, and jury were going

to hold an inquest over the body of Jap." On Monday morning, the next day, defendant went to Grant George's, in the field where the latter was at work, and the witness says he "told me if anybody asked me if he had borrowed my gun, not to tell them."

Such is the testimony. In our opinion, it is amply sufficient, under the admirable charge of the court upon the law of circumstantial evidence, to warrant the jury in finding the verdict, and the court in rendering judgment against this defendant for the murder.

We have been able to find no error in the record of which defendant has any just grounds for complaint, and believing that he has been fairly, legally, and justly convicted, the judgment is affirmed.

*Affirmed.*